Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today is number 221579, United States v. Stephen Potter. Would counsel for the appellant please introduce himself on the record and speak in? Morning. May it please the court. Alexander Chen for the United States. May I reserve two minutes for rebuttal? Yes, you may. Your honors, here there was a sign indicating the right lane was going to end. The officer in question testified in response to a question from the district judge that he relied on that sign, and that he understood it to mean that the right lane was going to end and the left lane would continue onwards. The district court found the officer's testimony to be credible. Given these facts, the officer reasonably believed this is a right lane end situation. And if that holds true, the current question necessarily had to make a lane change to the left lane which continued onwards. And that would be an appropriate application of the New Hampshire Signaling Statute, such that vacating of the suppression order would be appropriate. Even if the officer's reliance was somehow unreasonable, the government believes that it still has a path forward, even though it would be much harder. In that case, that would just be a very narrow, reasonable mistake of law. And for that, we can look to the Mahaffey case. There we have an almost identical traffic maneuver, a right lane end situation with a sign saying that exactly. There, of course, the Texas Court of Criminal Appeals divided narrowly, five to three. Of course, the majority did say that the officer was unreasonable in pulling over the car for failing a signal. But the dissent did agree with the officer as did the Intermediate Appellate Court and the Trial Court, namely that as the government's position is here, once the right lane ends, you have to move over to the left lane. That is a definition of a lane change. Mr. Chen, you had in your brief what I thought was a helpful analogy of a posting of a sign that said stop ahead, stop sign ahead. And then you get ahead, and there's an intersection and no stop sign. And as I understand it, there's no dispute. In that situation, you would not arrest someone for or stop someone for going through the intersection. Yes. Yes, Your Honor. I think the defense raised in the brief. There, however, of course, the government agrees that would be very unreasonable. It's a blatant contradiction between a sign that says stop sign ahead, and there is no stop sign. Here, however, of course, the district court found the sign did not 100% accurately depict the roadway in question. However, I would say that it's not analogous to the stop sign situation. Here, of course, the sign, except for the driver's manual, it meant right lane ends. The right lane did end. The district court, of course, characterized it as a blending of the two lanes through a narrowing point. The district court didn't find that the right lane did, right? The court, in fact, found the opposite, a narrowing of two lanes. Yes. Yes, Your Honor, the district court did say that. Of course, the government is not challenging the district court's historical finding, in effect, on a appeal, which, of course, would be subject to a clear error review. What are we to make of the fact that this sign doesn't appear to correspond with the factual reality that the district court found? In that case, however, Your Honor, the government's point would be that the whole point of having traffic signs is to signal to motorists, police officers or not, what the road conditions look like. Here, of course, it did signal the right lane was going to end. Your Honor, you've seen the photos of the location of the traffic stop. The right lane, the government would characterize it as it does end. Of course, the district court did find all it was. But at least the officer's belief that the right lane was going to end was objectively reasonable, given the objective indicator of the sign. But doesn't it, and help me with this, doesn't it seem that with the parties in agreement on the proposition, as evidenced by the stop sign hypothetical, that a significant enough disparity between the message that one would glean from the sign and then the subsequent actual physical conditions that you would experience as a driver, the proposition on which there seems to be agreement is that once that disparity gets to a certain point, it becomes unreasonable to rely on the prior sign, as opposed to the actual conditions. And so if we accept that proposition, then we have here fact finding by the district court judge, who, without objection from the parties, went and drove and physically examined the layout of the road and what it's like to drive on that. And we have an investigator observe that out of 24 cars, not a single one signaled. Doesn't that suggest that we have here, in effect, the stop sign hypothetical, i.e. a great enough disparity between the message one gets from the sign and the actual physical conditions? So, Your Honor, the government agrees that there is a certain point where if the roadway is so contradicts this road sign that an officer cannot reasonably rely on that sign. Here, however, of course, the court did, in fact, drive the location and made certain fact findings. That goes to the district court's conclusion that there was, in fact, a mistake of fact by the officer. However, of course, the officer did, the officer of government's position is that the officer reasonably relied on that sign. The government's position would be, the closest analogy would be, for example, from the cases in Oklahoma and Maine. For example, in one of the cases, there was a sign that says the speed limit is X. It's actually Y. Now, of course, there's no blatant contradiction on the roadway to lead the officer to believe otherwise. And in another case, I think the Maine case, the officer saw a sign that says no passing here. Sign was mistaken, but there's no indication otherwise. The court, again, I think what it boils down to is given what the officer knew at the moment, he saw a sign, the roadway approximated that sign, as government concedes that the district court found that the sign was not 100% accurate, but given these objective indicators, it was at least objectively reasonable for the officer to conclude that this was, in fact, a lane end situation. So, go back to the roadway. You see a slow for construction ahead sign, and you drive on, and there's no construction. Would an officer be reasonable pulling someone over for not slowing in a construction zone? I think not. I would agree, Your Honor. I think not. Well, then I come back to, given it's certainly theoretically  Whether we have it depends on what the roadway says. What the road looks like, and I'm stuck a bit on the fact that the district court judge actually saw the road, drived on it, formed a view of it, and we haven't, and why shouldn't we give some pretty substantial weight to the judge's observations of the layout? And, Your Honor, I think it boils down to, the government, again, is not disputing that the roadway is, in fact, as the district judge described, but under Hine, the Supreme Court has directed courts, the trial courts, to consider it, consider it a view of the facts from the view of the officer. Officers have split-second decisions, I think, as the Chief Justice explained. I think the analogy the Chief Justice used was the first time a Segway comes rolling by a park, but the park says no vehicles allowed, the officer needs to make a decision, no matter how obvious it may be to a court later on. Here, the officer made a split-second decision. I don't know if you're answering Judge Keada's question, which is, what deference do we give to the trial judge's finding about the reality of the circumstances of the road? My apologies, Judge Keada. So, I think the appropriate level of deference is to agree with the district court that the road, that the sign does not accurately depict the roadway. However, there should be far less deference given to the district court when the question is, what was the objective reasonableness of the officer in question? That's how I would characterize it. My apologies, Your Honor. But no need to apologize. If we accept that proposition, though, that you just put forward, then what do we make of the fact that the record seems to indicate that the officer had been over that roadway many times before? So, he knew the disparity. Yeah, so certainly, the government does agree that the officer testified he'd driven by there before. However, just by way of example, just because someone drives past a roadway or a sign many, many times before doesn't mean they're necessarily paying attention to it all the time. For example, you can pass by a landmark. You can think it means A, but it actually means B until you're upon closer inspection. Here, the officer saw something. He saw, on the day in question, he saw the car in the right lane move over to the left. He thought it was a violation of the signaling statute. I think that's obviously played into the fact the officer has driven by before and went to the district court's characterization that it was objectively unreasonable. But, again, the record's not entirely clear as to whether or not the officer has, in fact, paid attention to that sign actively for however many times he's driven past it before. Can I ask you a common sense question regarding interstate highways and on-ramps? So, it seems to me that it's pretty common for the on-ramp entering on the right side to merge onto the highway, or some might think it's a lane change given that the ramp is going to end at some point, right? Do you agree with that just sort of general assessment? Yes, Your Honor. What's the difference? Your Honor, actually, I think here there would be, I would not see any difference here in the signaling requirement. If you are entering or exiting a highway, you're on an on-ramp or an off-ramp, by definition, you have to make a lane change. You have to enter into the highway or onto the local road you're trying to enter. And a signal is required when you enter an interstate highway under those circumstances? Yes. You sure about that? Your Honor, I think it's at least a plausible interpretation of the New Hampshire signaling statute. Whenever you are entering into a new lane, I think it's a fair read of the statute. And again, objective, reasonable, and so on. Well, your answer assumes that it's entering a new lane. And I'm positing that that's not the way interstate highway on-ramps are typically viewed. I mean, unless you're saying that the state troopers could sit there and pull everybody over on the interstate highway. Of course, the New Hampshire Supreme Court is never weighing on this exact question. I suspect it would be fairly rare, as your Honor is probably getting at. Again, I think that goes to objective reasonableness of the statute. I think it is a fair reading of the statute that an officer could pull over someone trying to merge into the freeway if the right lane is ending and that person fails to signal. Now, I think I would just briefly want to touch on the Hine concurrence versus the Hine majority opinion. I think that was a focus point of the governance brief and the defense brief. Obviously, the court has read them very thoroughly. The governance position is that the meaning of Hine should only be drawn from the majority opinion set forth by Chief Justice Roberts. And that the test set forth by the Chief Justice is somewhat amorphous, I will agree. But it is basically, what would a plain everyday reader of English believe to be a reasonable reading of the statute. Justice Kagan's concurrence, there does seem to be some dissonance there. I know that this court in the Lawrence opinion, unpublished, did cite favorably to the Kagan concurrence, as have other lower courts nationwide. But whereas the Chief Justice's majority opinion focuses on a prospective situation where an officer is faced with an unusual situation. Again, the example with the Segway in the park. Justice Kagan's concurrence focuses more retrospectively. What would a judge do? A learned judge, with many years of experience, with the advantage of briefing of the parties, with the advantage of fact-finding retroactively, only then, if the judge, a reasonable judge, believes the officer could have been mistaken, does the benefit of doubt apply to the officer. The government, of course, the government in its brief has contended, of course, that the appropriate measure, the appropriate test, can only be found in the majority opinion, because Justice Kagan's vote, neither Justice Kagan's nor Justice Ginsburg's votes were necessary for the holding in Hine. Unless the court has any other questions at this point, I rest. Thank you, Mr. Chen. Thank you, Counsel, at this time, would Attorney Meisner please introduce herself on the record to begin? Good morning, Your Honors. May it please the court, Judith Meisner, representing Mr. Potter. As the court has noted, the district court made, I'm a little shorter, the district court made findings of fact,   which the government says it doesn't contest. They're clearly not, clearly erroneous, given the photos that were introduced in the district court, that are some of which are set out in our brief and some of which are in the joint appendix, and the fact that the court made its own observations driving through the area. Government's argument hinges on its assertion that the right lane ended, and even if it didn't, it was reasonable for the officer to believe it did because of the road sign. But let's look at that road sign. Actually, the road sign that was on the road is not the same as the sign that is in the driver manual. The road sign on the road had a dotted line that went up to the very point where the lane would end. So in order to, you would have to be off the road if you were not changing lanes. You would have to cross over the white line in order to avoid going off the road for the way that sign is configured. Well, that's clearly not, as the district court found, what the road here actually shows. The court found that after the intersection, you had two lanes, after the intersection, the lanes merged together and eventually narrow into a one-lane road. That the configuration of the narrowing point, which is what he called the point where the dotted line ends, doesn't present a termination of the right lane. So the right lane, he did not find that the right lane ended. He found the right lane did not end or require a lane change, abrupt shift, or crossing of a middle or dotted line. And then he also found, as we discussed, that the sign does not resemble the actual roadway or the configuration of the narrowing point. So there's really no basis to find that the right lane ended, which is the whole predicate of the government's argument. Counsel, can I ask you one question about this? This is a yellow sign with black print. Yes. I thought in New Hampshire, and I'm asking if you know, I thought that the rules of the road were that the yellow signs were, it will be reasonable if you comply with this sign. So for example, when there's a yellow sign that posts speed, it's if you stay under that speed, you're prima facie lawful, as opposed to if you're over that speed, you're prima facie unlawful. You know what I'm getting at? I think so. And do you know? Well, I did. It's been a long time for me, so. Well, I was never there, but I did read the driver manual. You should come, it's nice. I have been up to New Hampshire many times. I just have not been up there to take a driver's test. I did read the driver manual though, and it describes the yellow signs as warning signs, suggesting that there is some kind of change. And as distinguished from a regulatory sign, such as the posted speed limit sign. Now the court also made findings about the officer's observations, and said that the officer saw a car traveling in the right lane before the narrowing point, start to merge left or move right in front of his cruiser after the dotted line, distinguishing the two lanes ended. And the officer, and that he found that the officer didn't see the car execute a lane change or cross a dotted line. And the officer's testimony was that right before the right lane ends, there's a sign indicating the right lane does end, requiring a merge. And that after the dotted white line, distinguishing between the two lines ended, the car started to merge left or move right. So I believe that the court's findings of fact are not purely erroneous, and should be accepted by this court. And under those facts, there was no reasonable, objectively reasonable mistake of fact, because it was not reasonable for the officer to determine that the right lane ended, given the configuration of the road. And his own testimony about the car kind of merging or moving to the left, because under the New Hampshire statute, moving within the roadway is not a lane change. It's distinguished from a movement that would require a turn signal. The, moving on to whether this was a mistake of law. In Hine, the Supreme Court said that a reasonable suspicion can be based on a mistake of law. And the government has argued that the district court should have asked whether the statute requires the driver to signal when the lane ends, and the driver must then move into the remaining lane, and that the answer to that is at least debatable. But I'd suggest that the question really is whether it was objectively reasonable for the officer to believe that what he observed constituted one of the three circumstances in which a signal is required under New Hampshire law. Are you saying that if we accept that proposition, we do not need to decide how to read the statute? Excuse me? Are you saying that if we accept your first proposition, then we don't need to decide how to read the statute? Well, there are a, an officer can make either an objectively reasonable mistake of fact, or an objectively reasonable mistake of law. Right, but let's suppose that the road configuration matched the sign. And let's suppose that we accepted the government's proposition, the government's reading of the statute, to indicate that that would therefore be a lane change, if the road were in accord with the sign. Well, that would depend then on construing whether the statute construed what the officer observed as a lane change. The- Well, but my hypothetical is that the layout of the road matched the sign. If- Well, if the layout matches the sign, then- Then we have the legal issue, right? Yes, well, no, but if the layout matches that sign, not the general sign in the driver manual, then if the car changed, if the car moved to the left, it would have to cross a line, because that line goes up to the edge of the lane. So, and if the car crossed a line, then yes, there's no question that that would be a lane change. I guess what I'm getting at is it's not clear to me what legal proposition, what construction of the statute, if any, you're saying that we need to accept over the government's objection in order to affirm. That as Judge LaPlante found, the statute is unambiguous. That the statute requires a signal only- Unambiguous on what precise point? Excuse me? Unambiguous on what precise point? On what constitutes a change, a lane change. The- So you're saying we have to rule for you on that, even if we find that the judge's conclusion that there was a substantial disparity between the message conveyed by the sign  Well, no, the judge was saying because of the disparity between the sign and the roadway, there was no mistake of fact. And because of that disparity, there was no lane change because the car did not cross the line. I think that the, his findings relate to both issues. He first looked to see what the historical facts, what the facts literally on the road are, and then he construed the statute. And he said that there are three instances where signals are required. One of them is an intention to change lanes. And he said that moving right or left in a roadway is not one of those situations that requires a signal because of the section of the statute that says turns are moving right or left can be made unless and until such movement can be made with reasonable safety. He then says, using the New Hampshire rules of construction, you look at the language of the statute according to its plain and ordinary meaning. If it's plain and unambiguous, you're done. Okay, let me try it this way. I haven't been clear enough. What construction of the statute that the government says is reasonable, do we need to reject, if any, in order to affirm? That changing lanes is moving within an unmarked area of the road. Okay. Because the court found, as a matter of statutory construction, that you needed demarcated lines to constitute a lane. And he looked at the... He looked to the New Hampshire driver's manual as well, saying that none of the terms require a signal when you are moving right or left without changing lanes and that does not encompass the merging movement here. The driver's manual also has descriptions of pavement markings. And those pavement markings, the manual says, define lanes. And it talks about the dotted lines that define lanes. And the common understanding of a lane change, of a lane, the court found, was an area that is marked by lines. That's also the definition that one finds in the Oxford English Dictionary. So the question in the... The statute does not define change lanes. So the legal question that he is looking at in terms of statutory construction is what is a lane change? And so that would be the issue that the court would have to review as a legal question. Whether a lane change requires crossing over some marked lines rather than simply moving within an area of unmarked lines. The court has no further questions. Thank you, Ms. Meister. Thank you. Thank you, counsel. At this time, Mr. Chen, please reintroduce yourself on the record to begin. You have a rebuttal. You have a two-minute rebuttal. Thank you. Alex Chen for the United States. Just, I think, just a handful of brief rejoinders. First, Judge Kayada, the government does agree that if the court agrees that the officer's interpretation of the facts was objectively reasonable, for example, that the sign at least closely approximated the roadway, that's mostly inquiry right there. If the lane ends, the government's position is that the car had to make a lane change in order to move into the new lane, the remaining lane. And that should constitute a lane change. Is this regardless of when the white lines stop? The broken lines? So, I think what the dotted white lines indicate is that the lane is ending. It is time to move over. Certainly, of course, there are some roadways out there where the dotted white lines continue all the way to the very end of the lane. Just by way of hypothetical, suppose that the car in question is just past the end of the dotted white lines on the right side of the road. There is a large truck on the left side. At the moment, they're both on the roadway still because the right car hasn't gone off the road, hasn't gone into a ditch. By that point, the government's position would be, if they're both sides, both cars are still on the roadway and there are still two lanes, and if the right car keeps going forward, it will go off the road. That's why it has to make a lane change to go over to the left. Now, in this hypothetical, for example, where there's a large truck on the left-hand side and the car's on the right, just past the dotted lines, the left car still is a right-of-way. The right car has to wait. And in that situation, I think it supports the government's logical steps that this should be treated as a lane change situation. If the court has no further questions, the government rests and asks the court vacate and remand. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.